ROBERT JOSSELYN, State Commissioner, &c. *vs.* STONE and MATTHEWS, executors, &c.

The object of the enrolment act was to protect the rights of persons who should become purchasers of property, and especially at execution sales; and unless judgments rendered shall be entered upon the "judgment roll" so as to enable persons desiring to purchase property to ascertain readily by reference to the "roll" whether any judgment existed against the person from whom the purchase was about to be made; all such judgments would cease to be a lien upon the property purchased. *Held*, that it is not necessary that the entry on the "roll" should show that the judgment was in existence against more than one of the defendants, but it is sufficient that it shows that a judgment is in existence against a particular person in relation to whom the information is wanted. Nor is it necessary that great precision should be observed in showing the names of plaintiffs.

A judgment rendered in the name of the "commissioners of the sinking fund," and enrolled as such after such commissioners had been superseded by the State commissioner, is as good for all substantial purposes as if enrolled in the name of the latter.

The 13th section of act of limitations of 1844, and the 11th and 13th sections of the enrolment act, are all in fact statutes of limitations, but upon the well-settled doctrine cannot affect the rights of the State.

By the provisions of the general lien act of 1824, and the "abstract act" of 1841, the rights of the State are not affected, unless the State is specially included or by necessary implication, and the lien attaches to the property of the defendant in any county of the State; because the rights of the State, upon well-settled doctrine, are paramount to those of the individual citizen, and the State is not considered as embraced in a statute unless such an intention is clearly manifest.

No laches is to be imputed to the State, and against her no time runs so as to bar her rights; and the general words of a statute do not include the State or affect her rights, unless she be specially mentioned or clearly intended from the act, to be included. *Held*, that there is nothing in the statutes under consideration that would take them out of the rule of ordinary statutes of limitations in reference to the rights of the State, or that would include the State in their operation.

Mr. Justice FISHER, *dissent.* — The act of 1841, (Hutch. Co. 890, § 1,) in using the words "all judgments or decrees," clearly embraces those to which the State is a party, and such was the policy of the law.

ON appeal from the superior court of chancery; Hon. Charles Scott, chancellor.

Stone and Matthews, executors of Cohea, deceased, filed their bill against appellant and John A. Quitman, setting forth that on the 7th of June, 1843, the commissioners of the sinking fund recovered a judgment in Adams circuit court, against their testator and said Quitman; which judgment was affirmed by this court, in favor of Samuel Matthews, State commissioner, against appellees as executors of said testator, at November term, 1846, with damages. That no abstract thereof was recorded in Hinds county, where the estate of testator was, until the 10th September, 1845, after the repeal of the abstract law. That neither of said judgments was legally enrolled in Hinds county, and if they had been the lien thereof, by express terms of the enrolment law, would have expired two years after enrolment.

That on the 14th May, 1849, the estate of said Cohea was duly declared insolvent by the probate court of said Hinds county. That after due notice, a report was made by the commissioner of insolvency of the claims presented and allowed against said estate, including said judgment. That upon exceptions taken to said report, said judgment was rejected and disallowed, and a final report made accordingly, approved, ordered for record, and recorded, — the same not embracing either of said judgments.

That in order to pay the claims allowed, it is necessary to sell the property of said estate; that defendants insist that said judgment is a lien thereon. Quitman threatens to enjoin if sale be attempted by complainants, and Josselyn is about to sell under said judgment, whereby bidders will be deterred at the sale made by complainants, from bidding any reasonable price, and the estate sacrificed; and it is necessary that a decision be had on said pretended claims before complainants proceed to sell, &c.

Authenticated copies of abstract and enrolment are filed as exhibits, and also proceedings in insolvency. *Pro confesso* was taken against Quitman, on process executed. R. Josselyn, as State commissioner, answered, admitting the material allegations of the bill, except as to abstract and enrolment, as to which he plead ignorance and required proof.

Josselyn *v.* Stone and Matthews.

A transcript of letters to complainants filed, and the deposition of circuit clerk, who proves there was no due enrolment. A decree for complainant was rendered, and Josselyn appealed to this court.

*John D. Freeman,* for appellant.

It is objected to this enrolment that the same is so made as to indicate separate judgments against Cohea and Quitman, whereas the judgment was in fact joint.

If this be an objection it is the fault of the statute, and not of the parties making the enrolment.

The statute provides that the clerks keeping the "judgment roll" shall "enter alphabetically the name or names of each and every defendant to any judgment or judgments, decree or decrees," &c., and they shall also enter the amount of the judgment or decree, the date of its rendition or forfeiture, the county in which it is rendered, and the day of the enrolment. The statute also provides the precise form of the entry. Hutch. Co. 893, § 12. By reference to the enrolment at p. 52 of the record, it will be seen that the clerk has followed the statute accurately, and has fully complied with the law in making the enrolment.

The names of the defendants were Quitman and Cohea. The judgment against Quitman could not, according to the statute, be enrolled under the letter C., nor could the judgment against Cohea be recorded under the letter Q. Hence it was impossible for the clerk to make the enrolment so as to show on the face of the enrolment itself, a joint judgment against Quitman and Cohea. The law does not require the clerk to state whether the judgment is joint or not. The object of the enrolment is to notify the public of the existing liens on property within the county, and this enrolment showed a judgment against Cohea, in the form prescribed by law, and must, therefore, be considered good notice to Cohea and the public of the lien of the judgment, from the date of the enrolment. Hutch. Co. 892, § 6.

It is further said, that the judgment was obtained in the circuit court in the year 1843, and that the judgment was not en-

rolled under the registry law of 1841, and therefore we obtained no lien under that law. In 1844, the enrolment law was passed, and our lien must therefore attach from that enrolment. It cannot be said that it is too late to enroll, because the registry act in force when our judgment was obtained has been modified, and we have enrolled under the modified act.

Besides, the enrolment law does not include judgments in favor of the State. It is a well-settled rule that all laws passed in derogation or limitation of existing rights do not include the State, unless the State is specially mentioned in the law. Hence statutes of limitation and all kindred acts do not bar the State.

The same may be said in relation to insolvent laws and bankrupt acts. They do not include the State; and the sinking fund has been declared to be the State's by this court repeatedly.

It appears, also, by the bill, that the judgment originally in favor of the commissioners of the sinking fund, in November, 1846, was affirmed in favor of Samuel Matthews, State commissioner. The answer admits the affirmance in favor of said Matthews. The State commissioner is a State officer, and the court will take judicial notice of the fact that Samuel Matthews was State commissioner anterior to the affirmance of the judgment in his favor, and if the judgment was not enrolled in proper time it was the fault of the same Samuel Matthews, who was also executor of Perry Cohea, and the plaintiff or complainant in this bill. Will Samuel Matthews, executor, be permitted to complain of the neglect of Samuel Matthews, State commissioner? Will two positions so repugnant be tolerated by this court? Will the State be permitted to be defrauded of her rights, by her willing the plaintiff to take advantage of his own wrong, admitting a full knowledge of the judgment in question, a neglect of his own duty to register and enroll the same? Is not the attitude of Matthews in this case such as to require his bill to be dismissed? Will he be permitted to make this court a handmaid in the perpetration of a fraud upon the State? I think not.

*George L. Potter,* for appellees.

This judgment is barred and gone by the proceeding in insolvency. The decision on appeal was that the decree rejecting claims was valid and conclusive; and so formal that it could not be reversed on a direct appeal. The judgment of Josselyn was thus finally barred, by due decree, as a claim against the estate.

We say, also, that the decree is correct for another reason. The estate had been declared insolvent, and defendants had no right to levy or sell the property of the estate under the judgment. This is clearly correct, if there was no judgment lien.

The judgment was in Adams county, and the estate in Hinds. The filing of an abstract created no lien, for the abstract law was repealed before it was filed. There was no valid enrolment of the judgment; nothing on the judgment roll to show a joint judgment. The original and not the affirmed judgment, was the one to be enrolled; as it was the operative judgment for executions, &c. *Calvit* v. *Planters Bank,* 3 S. & M. 143. But, if otherwise, the high court judgment was no lien, because not enrolled as a judgment in favor of the State commissioner, in whose favor the affirmance was had; and for the reason, before stated, that it was not enrolled as a joint judgment.

The answer insists that the State is not barred by limitations, but the plea cannot avail here. There was no lien in Hinds, until enrolment; and the act of 1844 gave the lien, but only for a time. Without enrolment there could be no lien; and with enrolment, the lien on old judgments existed for but two years. Of course the State could take only upon the terms of the statute.

It is argued for the appellant, that the judgment in question belongs to the State, and that Mississippi is not bound by the laws on which we rely. Let us see. The question is, Whether this judgment is a lien upon the estate of Cohea? and that involves the question, How can such lien arise, &c.? The abstract law of 1841 repealed the previous law, and declared that judgments should be liens in the counties where they were rendered, " and not elsewhere," except upon the condition of filing an.

abstract, &c. Hutch. Code, 890. As, under this law, no lien could be acquired in Hinds, except by filing such abstract there, I leave it for the learned counsel to show how the State may acquire a lien, if she repudiates the statute under which alone it could be acquired.

Two acts were passed on the 24th February, 1844. One declared that no judgment should be a lien until it was duly enrolled. Hutch. Code, 891. The other declared that no judgment theretofore rendered, should operate as a lien for more than two years from the date of the act. Ib. 832, § 13.

These two provisions relate to the same subject-matter. The one declares how liens may be acquired, and the other declares how long they shall continue. These provisions, being *in pari materia*, must be construed together. They declare that old judgments, being enrolled, shall be a lien for two years, and no longer. The policy was to make such liens notorious, and to restrict the period of their operation, for the security of the community; and judgments in favor of the State, are as much within the policy of the law as any others. It is vain to say the State is not subject to the restriction. The conclusive reply is, that she cannot acquire a lien at all, except by coming in under the very law by which the restriction is imposed; it was impossible, under the circumstances, for her to acquire but a temporary lien, limited to two years duration.

There is a plain distinction between this case, and that of an ordinary act of limitations, upon which no right arises to the plaintiff. The State contracts and sues by virtue of her sovereignty, and her right of action is not at all dependent upon the acts of limitation.

Suppose all laws relating to conveyances were repealed, and it was provided that henceforth no mortgages should be liens until recorded, and that such liens should exist only for two years; will it be pretended that a mortgage given to the State would not be subject to the restrictions? The true distinction is, that the State is not bound by ordinary legislation as to certain matters that she may do by virtue of her sovereignty; but wherever she is constrained to claim under a statute, she can take only upon the conditions and subject to the limitations imposed by the law.

Josselyn *v.* Stone and Matthews.

Again; this judgment was rendered in September, 1845, and the bill was filed in November, 1852. The eleventh section of the enrolment law declares that all such liens shall cease, as to creditors of the debtor, five years from the enrolment. Hutch. Code, 892, 893.

The estate of Cohea is insolvent, and its creditors are the parties directly interested in this claim of lien; if this large judgment is enforced, their claims are reduced to that extent. There can be no pretence to say the State is not barred by this section; her lien was necessarily subject to it.

As to the manner of the enrolment in this case, it is plainly insufficient. The purpose of the law was to inform the public of the very judgment under which a lien was claimed, and to this end the judgment roll was to contain a brief, yet full and accurate description of such judgment. It was to show the names of all the parties, the court and county, and the date and amount, &c. If there was more than one defendant, the names of them all should be set down under each proper letter. Such is the obvious policy of the law, and the form given in the twelfth section requires it. The first heading there noted is in these words, — "defendant's names," — in the plural; all the other headings being in the singular. As this enrolment is made, no one could surmise that there was a joint judgment; and the inquirer would search in vain for the judgment described on the roll; yet the purpose of the law was to inform him fully on the subject. See transcript, p. 7. If a party had searched the records of Adams county, and found the joint judgment, he could have found nothing to show him that it was the judgment enrolled. Edwards, the present circuit clerk, swears that he can find no joint judgment enrolled against Cohea and Quitman; he finds the separate judgments enrolled against each, and cannot say they have any connection with each other.

There is another ground on which the appellant is wholly precluded from all claim of lien, and all right of execution. He presented his claim before the commissioner of insolvency, and thus agreed to come in with the other creditors; and his whole claim was rejected. He thus waived his claim of lien,

and the decision of the court rejecting his whole claim is conclusive against it. He is precluded by that judgment, and can no longer be heard to urge that he has a claim, and may enforce it against the assets now held for distribution on the admitted claims against the estate. The probate court had full jurisdiction to pass upon the claim, and its decision is now final.

As to the alleged inconsistency of the position of Mr. Matthews, the same argument was urged here against the revival of the suit in his name as State commissioner. Gov. M'Nutt made his debut on that question, upon his return to the bar. But however that may be, this court will take notice that appellant was in office in full time to protect the State, and to contest matters in the probate court. The defect in the enrolment was the fault of the clerk, but if it was incumbent on the commissioner to correct it, there was laches on the part of the appellant in that particular.

Mr. Justice HANDY delivered the opinion of the court.

The question upon which this case depends is, whether the judgment in favor of the State commissioner, which was enjoined by the decree of the chancellor here complained of, was a lien upon the property of Cohea's estate at the time the execution enjoined was issued. For if the lien of the judgment existed, it was competent to enforce it by execution against the property, notwithstanding the estate had been declared insolvent, and the claim had been presented to the commissioners of insolvency and rejected.

Two grounds are taken to show that the lien did not exist: — 1. That the judgment was not enrolled in conformity to the enrolment act of 1844, whereby it ceased to be a lien. And, 2. That the judgment having been rendered before the passage of the statute of limitations of 1844, the lien expired upon the lapse of two years from the passage of that act, under the provision of the thirteenth section of that act, and the eleventh and thirteenth sections of the enrolment act.

I. Upon the first point, two objections are made to the enrolment: — 1. That the judgment was against Perry Cohea

and John A. Quitman, jointly, and that the enrolment was made as of a several judgment against each of them. 2. That the enrolment of the judgment of affirmance of the original judgment by this court, showed a judgment in behalf of the commissioners of the sinking fund, instead of a judgment in favor of the state commissioner, so that there was no such judgment as that enrolled.

We do not consider either of these objections well founded. The policy of the enrolment act was to protect the rights of persons who should become purchasers of property and especially at execution sales. To that end it was provided that judgments should not be liens upon the property of defendants therein, unless they should be so entered upon the "judgment roll" as to enable persons desiring to purchase property to ascertain readily by reference to that roll, whether there were any judgments against the person from whom the purchase was about to be made. The object in this was simply notice to the purchaser; and in order to facilitate that, the roll was required to be kept alphabetically, showing, in the appropriate place, the name of each and every defendant. It was not at all necessary to this object, that the entry on the roll should show whether there were other defendants or not. It was sufficient that it showed that a judgment was in existence against the particular person in relation to whom the information was required. Nor was it necessary that great precision should be observed in showing the name or names of the plaintiffs. If it was sufficiently certain to refer the person inquiring to the records, and to show that it was the same judgment found in the records, the object of the statute is answered. In this case, the enrolment of the judgment of affirmance in this court, though made in the name of the commissioners of the sinking fund, in whose name the original judgment was rendered, and not in the name of the State commissioner, was sufficient for all the substantial purposes of the act. For by reference to the records of the court to which the inquirer would be directly led by the entry on the judgment roll, the formal condition of the judgment could be ascertained, and the connection between the

64*

commissioners of the sinking fund and the State commissioner was not only shown by the record, but was a matter of which all parties were bound to take notice.

II. The second point is, whether the judgments had ceased to be liens.

It is conceded that the judgments are the property of the State, and to be treated in all respects as though they were in the name of the State; and the question is, whether the statutes referred to, the thirteenth section of the statute of limitations of 1844, and the eleventh and thirteenth sections of the enrolment act, apply to judgments in favor of the State.

It cannot be denied that these provisions are statutes of limitations. .The first is such upon its face, and the two other sections are such in necessary legal effect as well as in their professed object. And upon the well-settled doctrine in relation to such statutes, they cannot affect the rights of the State.

By the abstract act of 16th February, 1841, it was provided amongst other things, that no judgment should operate as a lien upon the property of the defendant, situate in any other county than that in which the judgment should be rendered, unless an abstract, showing the names of the parties to it, its amount and the date of its rendition, should be filed and recorded in the office of the clerk of the circuit court of the county where it was proposed to give it the effect of a lien on the defendants' property situate therein, and that the lien of such judgment upon such property should take effect from the time of filing such abstract.

This act was intended as a restriction upon the general operation of the act of 1824, under which a general lien upon all the property of the defendant, situate in any county in the State, was created by a judgment rendered in any one county. It does not expressly repeal the act of 1824; and it was doubtless merely intended as a protection to purchasers of property of defendants, situate beyond the limits of the county where the judgment was rendered, who might be injured for want of notice of the existence of the judgment. It does not, in terms or by necessary implication, include the rights of the State, which, upon well-settled doctrine, are paramount to those of the

individual citizen, and are not to be considered as embraced in the statute, unless such an intention is clearly manifest. This principle will be further considered hereafter; and we think that by force of it, the provisions of the abstract act do not apply to judgments rendered in favor of the State, and consequently that the lien of the judgment in this case was in force in Hinds county, from the date of its rendition.

At the time of the rendition of the judgment in behalf of the commissioners of the sinking fund, the judgment was a lien upon the defendants' property, from its date, and so long as it continued an effective judgment. This rule was deemed by the legislature of 1844, to be unwise policy in relation to judgments generally, as affecting the rights of purchasers, and a new and very stringent rule was adopted, shortening the period of existence of such liens. The State, then, having a lien when these statutes were passed, the question is, whether it was limited or affected by them.

It is a universally recognized rule that no laches is to be imputed to the State and against her; that no time runs so as to bar her rights. This is a great principle of public policy, intended to secure the rights and property of the public against loss or injury by the negligence of public officers and agents. And upon the same reason, it is the settled doctrine that the general words of a statute do not include the State, or affect her rights, unless she be specially named, or it be clear and indisputable from the act that it was intended to include the State. *People* v. *Gilbert*, 18 J. R. 228; *United States* v. *Hoar*, 2 Mason, R. 314; *Inhabitants of Stoughton* v. *Baker*, 4 Mass. R. 528; *State of Maryland* v. *Bank of Maryland*, 6 Gill & Johns. 205–226.

There appears to be nothing in these statutes that would take them out of the rule applicable to ordinary statutes of limitations, in reference to the rights of the State, or that would include the State in their operation as general statutes. The same principle, founded upon her sovereign right, which would exempt her from the operation of such statutes in bringing her suit, and obtaining judgment, must also exempt her from their operation in impairing her right when her judgment is obtained.

For otherwise the form would be protected, but the substance denied. The rights of the State are simply unaffected by such statutes, and of this all the world are bound to take notice. As to purchasers from or under the defendant, they stand where they would have stood before the passage of these acts, and have the same means of protecting themselves against such liens, by diligence and investigation, that they had under the old law. And if they sustained a loss, it is even better that individuals should suffer than that the commonwealth should sustain an injury. And as to the defendant, there is no greater reason why he should use these statutes to the detriment of the State, than the other statutes in relation to the limitation of actions before judgment; and his creditors have no higher right in this respect than belongs to him.

The counsel for the appellees puts the case of a mortgage executed to the State in virtue of a general act of the legislature, limiting the liens of mortgages to two years; and asks whether a mortgage subsequently executed to the State, would not be subject to such an act. The mortgage being executed subsequently to the passage of the law, it would be a question whether the act was not intended to be applied to such cases, and whether the mortgage would not be considered as a contract entered into by the parties with reference to the statute under which it was made. But that case is materially different from the present in this, that the lien of the judgment was in force at the time of the passage of these acts, and the question is, whether they are to be held to apply to such a judgment, whose lien existed before their passage. The case put would be somewhat analogous if the State had already had a mortgage, and afterwards a statute had been passed limiting the liens of mortgages to a shorter period than that existing when the mortgage was made. Upon well-settled principle, such an act would not apply to such a mortgage, because it would be in derogation of public right, and the presumption is that the legislature never intended to give such an effect to the statute. To remove this presumption, a clear intent to include the State must be apparent from the statute, or at least must arise by necessary implication.

Josselyn *v.* Stone and Matthews.

It follows from these views, that the lien was not affected by the statutes of 1844, and also that the rejection of the claim of the State, founded upon the judgment and the affirmance in this court, did not conclude the State from enforcing her judgment lien by execution.

The decree of the chancellor is therefore reversed, the injunction dissolved, and the bill dismissed.

A petition for a reargument was filed in this case by the counsel for the appellees, but it was overruled by the court.

Mr. Justice FISHER delivered the following dissenting opinion.

The judgment in this case was rendered on the 7th day of June, 1843, and no abstract of it having been filed in the office of the clerk of the circuit court of Hinds county, as required by the provisions of the act of the 16th of February, 1841, the question for decision is, whether the lien of the judgment attached to the property of the defendant situate in the last-named county.

The majority of the court, on the application for a reargument of the cause, hold that the act of 1824, so far as the interest of the State may be concerned, is not repealed or modified by the act of 1841, and that the lien of the judgment attaches to all the property of the defendant, in any county of the State. The first section of the act of 1841 is in these words, namely: " All judgments and decrees of any superior, circuit, district, or superior court of law or equity, holden within this State, shall operate as liens from the date of their rendition upon the property of the debtor, being within the county in which the sitting of such court may be holden, and not elsewhere, unless upon compliance with the conditions hereinafter enacted." Hutch. Code, 890.

The words "all judgments and decrees" embrace those to which the State is a party. Besides, such is manifestly the policy of the law, which was designed to protect innocent purchasers of property situate in one county, against judgments rendered in another, unless evidence of the existence of the

judgment appeared of record in the clerk's office of the county in which the property was situated.

If such be not the construction of the law, it must fail in accomplishing the end which the legislature had in view, and purchasers must either purchase subject to the lien of the State, of the existence of which they had no knowledge, or they must cause to be examined the sixty clerks' offices in the State, in some one of which a judgment may have been recovered by the State against the person proposing to sell, before the purchase can be safely consummated. · Construing the law, therefore, either with reference to its language, or the evil intended to be remedied, I am clearly of opinion that the State is embraced by the provisions of the act of 1841, and therefore disagree with the views of the majority of the court on this point in the case.