MoIlvatne, C. J.
In the first place, the defendants claim, that at the time the agreement was made, there was no authority or power in the board of public works to purchase dredges, boats and other implements at a price in excess of $20,000, and, therefore, the agreement to pay in excess of that sum is void. This claim is based on an act passed-May 13, 18T8, entitled “An act to appropriate money to repair the public works and render them fit for navigation.” By this act, in addition to tolls, fines and water-rents of the public works, the sum of $30,000, from the general revenue of the state, was appropriated “for the purpose of putting said works in such state of repair as will prevent an overflow and render them fit for use at the opening of„ navigation,” and it was provided, that of said sum of $30,000, “ that not exceeding twenty thousand dollars,” . . . “may be used in leasing or purchasing the necessary dredges, and other boats, implements, tools, horses and mules, required to keep said works in repair.” In this statute we find no limitation upon the power of the board in making such purchases. The limitation is solely upon the use of the appropriation from the general revenue. If necessary, any, sum in excess of $20,000, to be paid for such implements, might have been taken from the tolls, 'fines and water-rents of the public works. So that, in this act of appropriation, there was ample provision made for the payment of the whole amount of relator’s claim, provided only, that in addition to the $20,000, the receipts of tolls, fines and water-rents should prove sufficient to make up the amount.
Ample power to enter into the contract with the relators was conferred upon the board of public works, by the act of April 4, 1859, entitled “ An act conferring certain powers on, and prescribing certain duties of, the board of public works.”' Although the necessity for the exercise of the powers herein conferred was, in a great measure suspended during the time the lessees were in possession of the public works, it was fully revived (the act not having been repealed) as soon as the board was again put in possession of the w-orks, under the resolution of May 11, 1818. And here it may be remarked, that the necessity and propriety of makiúg the .-purchase, at the time *412 •and under the circumstances, are not questioned; while, on the other hand, it appears that the purchase was very advantageous to the state.
In the next place, it is claimed, that the funds in the treasury subject to the control of the board are not applicable to the payment of relator’s demand. It is true that the special appropriation act of May 13,1878, cannot now be looked to as an authority for using the funds in the treasury for such payment, as section 22 of article 2 of the constitution provides, “No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law; and no appropriation ■shall be made for a longer period than two years.” But section 3 of the general appropriation act of April 15, 1880 (77 Ohio L. 254) provides, “ That there is hereby appropriated from any money coming into the treasury, as receipts from the public works, the following sums, to wit: For the maintenance, repairs, compensation of superintendent, and other employees of the public works, not otherwise herein provided fox’, the receipts from tolls, rents, fines and other income, heretofore, and ■since the 15th day of November’, 1879, received or hereafter .ax’ising from the use of the public wox-ks, not otherwise appropriated.” The funds in the treasui’y sought to be reached, are of this description, and we see no reason why they should not be used for the payment of relator’s claim. To hold that this ■appropriation can be applied only to liabilities incurred' after the passage of the act, would be unjust and unwarranted.
The answer further sets up, that on May 23, 1878, the contract with relators was modified by the Board of Public Wox’ks, hy the following action, as recorded upon its minutes:
“Board met. Present, Messrs. Thatcher, Schilder and Evans.
“The attoxmey-genex’al vex’bally submitted his opinion, as requested yesterday, to the effect, that the board could not ex-need in the pux’chase of the boats, tools, &c., of the lessees, the •sum of $20,000, appropriated for that pux’pose.
“ On motion of Mr. Evans, the following preamble and ■order were then adopted by a unanimous vote of the board, to wit:
*413 “ Whereas, This board, on Saturday, the 18th inst., resolved to buy the dredges, boats, tools, &c., belonging to the lessees of the public works of this state, at the sum of $38,820, under the erroneous impression that the board could use a part of the revenues of the public works, in their purchase, in part,, and
“ Whereas, The attorney-general has given his opinion, that no such use can be made of the revenues of the public works under the existing laws; therefore,
“ Resobed, That the terms of said agreement to purchase be modified in this, to wit: That the board of public works will now pay to said late lessees the sum of $20,000 on account of said tools, &c., the same being the amount appropriated for that purpose, May 13,1878, leaving the lessees to depend upon the affirmance of said contract of purchase by the general assembly, and the making of the necessary appropriation to pay the remainder of said consideration to the general assembly.
“ Thereupon, on motion of Mr. Schilder, the following order was adopted, to wit:
“ Ordered, That the president of this, board issue his chock on the auditor of state in favor of the lessees of the public works for $20,000, on account of the purchase of dredges, boats, horses, tools and implements, bought of them on the 18th inst., as per schedule furnished.”
And it is averred that relators, with full knowledge of the above action of the board, acquiesced therein, and received the payment of said $20,000.
It is quite evident, that the sole inducement which led to the action of the board on the 23d inst., was the belief induced by the opinion of the attorney-general, that the contract of the 18th inst. was void for want of power in the board to make it, and the sole object of such action was to affirm the contract as far as was in the power of the board, leaving it to the legislature to ratify the unauthorized stipulations.
Except for this belief, which we have already shown was erroneous, no such action would have been taken by the board; and certainly any acquiescence on the part of the lessees to a modification of the contract (if any were shown) must be at *414 tributed to the same mistake. But the only fact, or act of the lessees tending to show acquiescence in a modification of the agreement of the 18th inst. was the receipt of the $20,000, after knowledge of the action of the board on the 23d. This is not sufficient to bind the lessees to such modification. The payment and receipt of the $20,000 were in strict accordance with the contract of the 18th. Plainly, there was no consideration moving to or from either party, to induce or support a modification of the contract, and, for all that appears, the relators may insist upon the original terms of the agreement.
It is also insisted by the defendants, that the claim of relatora, being one against the state, interest thereon cannot be allowed.
On the other hand, it is claimed that the relators are within the terms and meaning of the statute which provides “ That all creditors shall be entitled to receive interest on all money after the same shall become due, either on bond, bill, promissory note, or other instrument of writing, or contract for money or property.” That the words of this statute are broad enough to embrace the claim of relators is not disputed; but it is contended that the state is not embraced within the general words of a statute, and can be held to be within the purview of a statute only when so declared expressly or by necessary implication.
The doctrine seems to be, that a sovereign state, which can make and unmake laws, in prescribing general laws intends thereby to regulate the conduct of subjects only, and not its own conduct.
It' is a familiar doctrine, that a state is not affected by the statute of limitations, however general its terms may be. Greene Township v. Campbell, 16 Ohio St. 11; Josselyn v. Stone, 28 Miss. 753. Upon the same principle, it has been held, that a statute providing that “ costs shall follow the event of every action or petition,” does not apply to a party prevailing against the state even in a civil cause. State v. Kinne, 41 N. H. 238. Indeed, the doctrine of the common law ex-pressed in the maxim, “ The king is not bound by any statute, if he be not expressly named to be so bound ” (Broom Leg. Max. 51), applies to states in this country as well. Moreover, *415 upon tlie same principle rests tlie well-settled doctrine tliat a state is not liable to be sued at the instance of a citizen. Not because a citizen may not have a just claim against the state, or may. not suffer injury at the hands of the state; but because it must be assumed that the state will ever be ready and willing to act justly toward its citizens in the absence of statutes or the intervention of courts. Coster v. Mayor, 43 N. Y. 399.
In view of these principles, we must hold that the state, as a •debtor, is not within the purview of the statute above quoted, •and cannot be adjudged to pay interest upon any claim against her in the absence of a promise, expressed or implied, to do so; •and it is not claimed that any such promise has been made to relators. Attorney-General v. Cape Fear Navigation Co. 2 Ired. Eq. 444; Auditorial Board v. Arles, 15 Texas, 72; State v. Thompson, 5 English (Ark.) 61; 9 Opinions of Attorneys-General, 57.
It is suggested, however, that even in the absence of a statute, or an agreement, requiring the state to pay interest upon relator’s claim, that damages, in place of interest, might be awarded, under section 6753 of the revised statutes, which provides, “ If judgment be given for the plaintiff, the relator may recover damages which he has sustained, to be ascertained by the court, or a jury, or by a referee, or master, as in a civil .action.” This section certainly does not contemplate an award •of damages against the state, in whose name alone the writ of mandamus can be prosecuted. And to assess damages in this •case to be paid out of moneys in the treasury belonging to -the state, would be in effect an assessment against the state. And to assess them against the members of the board of public works would be unjust, for several reasons: 1st. The members now composing the board, and sued, are not the same members who composed the board during the greater part of the time during which payment has been delayed. 2d. The delay has been occasioned by an honest conviction that there was no authority in the board to make payment.
If the relators have, been injured by delay in making payment, they can look only to the general assembly for redress.

Peremptory writ awa/rded.