ROSALY *v*. THE PEOPLE ET AL.

APPEAL from the District Court of Ponce.

No. 511.—Decided June 14, 1910.

ACTION CF EJECTMENT AGAINST THE PEOPLE OF PORTO RICO—POWER TO BE SUED WITHOUT ITS CONSENT—PRINCIPLE APPLICABLE TO THE UNITED STATES.—According to the constant jurisprudence of the Supreme Court of the United States, there is no doubt that The People of the United States, The People of the States of the Union, and The People of some of the organized or incorporated Territories, enjoy the privilege of immunity from suit without their consent.

ID.—SOVEREIGNTY CF PORTO RICO DURING THE SPANISH DOMINATION.—Throughout the Spanish domination, even down to its closing period, when the autonomic régime was established, Porto Rico could be considered neither as a sovereign nor a quasi-sovereign. The sovereign was never Porto Rico, but always Spain.

ID.—TREATY OF PARIS—CESSION OF PORTO RICO TO THE UNITED STATES.—By virtue of the Treaty of Paris the sovereignty of Spain over Porto Rico passed, through cession, to the United States.

ID.—FORAKER ACT—POLITICAL CONSTITUTION OF PORTO RICO.—Upon studying the Foraker Act in its entirety, the conclusion is reached that although Congress did not constitute Porto Rico as an independent sovereign (nation), nor as a sovereign incorporated into the American Union (state), certain it is that it invested Porto Rico with many of the attributes which characterize sovereignty.

ID.—PRIVILEGE OF NOT BEING SUED WITHOUT ITS CONSENT.—Among the attributes conferred upon Porto Rico by the Congress of the United States, the privilege of not being sued without its consent is not included.

ID.—CONSTRUCTION OF LAW—POWER TO SUE AND BE SUED.—The words "power to sue and be sued," have always had an invariable signification.

ID.—PRIVATE, MUNICIPAL AND PUBLIC CORPORATIONS.—The words "power to sue and be sued," besides being applied to private corporations, were used with reference to municipal and other public corporations.

ID.—USE OF THOSE WORDS BY CONGRESS.—The Congress of the United States also made use of the words "power to sue and be sued," when legislating for the District of Columbia, when fixing the powers of corporations, and when creating national banks.

ID.—BODY POLITIC.—The words "body politic" and "body corporate" are used indistinctly under the same title in legal treatises, with reference alike to municipal corporations and states.

ID.—MEANING OF THE WORD "POWER."—The word "power," as generally understood, implies "responsibility."

ID.—CONSTRUCTION OF LAW—APPLICATION OF TWO DIFFERENT RULES.—There cannot be two different rules of construction for determining the scope of words whose signification has been invariable for centuries.

ID.—INTENTION OF CONGRESS.—Had the intention of Congress been to endow Porto Rico with the attribute of .sovereignty consisting in the prerogative of immunity from suit without its consent, either it would have refrained from using the words "with power to sue and be sued," as in the case of Hawaii, or it would have said "with power to sue and 'consent' to be sued."

OVERSIGHT OF CONGRESS.—The presence of the words "with power to sue and be sued," in our Organic Act, cannot be ascribed to an oversight of Congress, but, on the contrary, it may be presumed that in employing them it had in mind the obligations contracted in the Treaty of Paris.

The facts are stated in the opinion.

*Mr. Foster V. Brown, Attorney General,* and *Jesús M. Rossy, fiscal,* for appellant.

*Mr. José Tous Soto* for respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

This is an appeal taken from a judgment of the District Court of Ponce, sustaining the action of ejectment instituted by Manuel Rosaly Castillo against The People of Porto Rico, Adolfo Lespier and Gerónimo Sánchez.

The defendants, Lespier and Sánchez, were personally summoned, and, having failed to appear in due time, their default was noted; the trial continuing with the sole intervention of The People of Porto Rico, as defendant.

The appeal was taken by The People of Porto Rico, the only ground alleged in support thereof in this Supreme Court being that inasmuch as The People of Porto Rico cannot be

sued without its consent, and it appears that such consent had not been given in the present case, the district court acted without jurisdiction; wherefore, the judgment rendered by it was null and void.

Let us examine this interesting question with all the attention it demands. We do not propose to discuss whether or not such privilege exists with respect to The People of the United States, or to The People of the States of the Union, or to The People of some of the organized or incorporated Territories. This question has been decided in the affirmative on several occasions by the Supreme Court of the Republic. Our study shall be confined to Porto Rico.

Throughout the Spanish domination, even down to its closing period, when the autonomic régime was established, Porto Rico could be considered neither as a sovereign, nor as a quasi-sovereign. The sovereign was never Porto Rico, but always Spain.

By the Treaty of Paris, Spain ceded to the United States the Island of Porto Rico and other islands which were then "under her sovereignty" in the West Indies, and the Island of Guam in the Marianas or Ladrones.

The sovereignty with respect to Porto Rico was, therefore, transferred by virtue of this treaty, from the Spanish Monarchy to the United States.

The Island was ruled at the beginning of the new sovereignty by a military government, and, afterwards, Congress— on April 12, 1900—passed an "act temporarily to provide revenues and a civil government for Porto Rico, and for other purposes."

Upon studying said act in its entirety, the conclusion is reached that although Congress did not constitute Porto Rico as an independent sovereign (nation), nor as a sovereign incorporated into the American Union (state), certain it is that it invested Porto Rico with many of the attributes which characterize sovereignty.

Among these attributes do we find that of not being sued without its consent?

Our answer must be in the negative, after a careful consideration of the entire act, especially section 7 thereof, which reads as follows:

"Section 7.—That all inhabitants continuing to reside therein who were Spanish subjects on the eleventh day of April, eighteen hundred and ninety-nine, and then resided in Porto Rico, and their children born subsequent thereto, shall be deemed and held to be citizens of Porto Rico, and as such entitled to the protection of the United States, except such as shall have elected to preserve their allegiance to the Crown of Spain, on or before the eleventh day of April, nineteen hundred, in accordance with the provisions of the treaty of peace between the United States and Spain, entered into on the eleventh day of April, eighteen hundred and ninety-nine; and they, together with such citizens of the United States as may reside in Porto Rico, shall constitute a body politic under the name of The People of Porto Rico, with governmental powers as hereinafter conferred, and with power 'to sue and be sued as such.' "

The words "power to sue and be sued" have always had an invariable signification.

Blackstone, in his Commentaries, says:

"II. After a corporation is so formed and named, it acquires many powers, rights, capacities and incapacities, which we are next to consider. Some of these are necessarily and inseparably incident to every corporation; which incidents, as soon as a corporation is duly created, are tacitly annexed, of course. As, 1. To have perpetual succession. This is the very end of its incorporation; for there cannot be a succession *forever* without an incorporation; and, therefore, all aggregate corporations have a power necessarily implied of electing members in the room of such as go off. 2. *To sue or be sued,* implead or be impleaded, grant or receive, by its corporate name, and do all other acts, as natural persons may. 3. * * *. 4. * * *. 5. * * *. These five powers are inseparably incident to every corporation, at least to every corporation *aggregate*. (1 Wendell's Blackstone's Commentaries, 475.)

And Kent, also in his Commentaries, says:

"(1). *Of their ordinary powers.*—The ordinary incidents to a corporation are: 1. To have perpetual succession, and, of course, the power of electing members in the room of those removed by death or otherwise; 2. To sue and be sued, and to grant and to receive by their corporate name; 3. * * *; 4. * * *; 5. * * *; 6. * * *; Some of these powers are to be taken in many instances with much modification and restriction." (2 Kent's Com., 278.)

In the case of *Bank of the United States* v. *Deveaux et al.,* Chief Justice Marshall, of the Supreme Court of the United States, in delivering the opinion of the court, expressed himself in the following terms:

"The plaintiffs contend, that the incorporating act confers this jurisdiction. That act creates the corporation, gives it a capacity to make contracts and to acquire property, and enables it '*to sue and be sued,* plead and be impleaded, answer and be answered, defend and be defended, in courts of record, or any other place whatsoever.' This power, if not incident to a corporation, is conferred by every incorporating act, and is not understood to enlarge the jurisdiction of any particular court, but to give capacity to the corporation to appear, as a corporation, in any court which would, by law, have cognizance of the cause, if brought by individuals." (5 Cranch U. S. Rep., 85.)

These words, besides being applied to private corporations, were used with reference to municipal and other public corporations. (See 28 Cyc., 1755.)

Congress itself made use of them when legislating for the District of Columbia (see *Metropolitan Railroad Co.* v. *District of Columbia,* 132 U. S. Rep., 6); when fixing the powers of corporations (see vol. 31, U. S. Stat. at Large, p. 1281, sec. 587, and p. 1304, sec. 721); and when creating national banks (see *St. Louis National Bank* v. *Allen and others,* 5 Fed. Rep., 551.)

It has been alleged that the words "with power to sue and be sued," used with reference to a sovereign or quasi-sovereign, such as The People of Porto Rico, should be given

a restrictive construction, and that, therefore, the meaning attached to those words, when used with reference to corporations, is not applicable.

The words employed by the legislator are: "and they, together with such citizens of the United States as may reside in Porto Rico, shall constitute a *body politic* under the name of The People of Porto Rico, with governmental powers as hereinafter conferred, and with power to sue and be sued as such."

The words "body politic" are defined in 5 Cyc., 719, as "the collective body of a Nation or State, as politically organized, or as exercising political functions; a corporation."

Consulting the work "Words and Phrases Judicially Defined," vol. 1, p. 820, it will be seen that the phrases "body politic" and "body corporate," are used indistinctly, and under the same title reference is made to *municipal corporations* and to *States.*

"These artificial persons," says Blackstone in speaking of Corporations, "are called bodies politic, bodies corporate, (*corpora corporata,*) or corporations." (Ewell's Essentials of the Law, p. 95.)

The word "power," as generally understood, implies "responsibility." The Legislature of Porto Rico has itself given it this interpretation when employing it in section 32 of our Civil Code, which provides that every corporation has power "to sue and be sued in any court," and when employing it in the act to establish a system of local government, and for other purposes, approved March 8, 1906, which provides, under section 2 thereof, that "the inhabitants of any municipality within the meaning of this act, are hereby constituted a *body politic* and *corporate* which shall have perpetual succession, may use its own official seal, sue and be sued * * * ."

There cannot be two different rules of interpretation for the purpose of determining the scope of words whose signification has been invariable for centuries. In using them,

Congress has adhered to their correct and well-understood meaning. Had its intention been otherwise, had it proposed to endow The People of Porto Rico with the attribute of sovereignty consisting in the prerogative of not being sued without its consent, either it would have refrained from using such words, as in the case of Hawaii, whose organic act was passed at the same session as that of Porto Rico, or it would have said "with power to sue and 'consent' to be sued."

The presence of the words "with power to sue and be sued," in our Organic Act, cannot be ascribed to an oversight of Congress, but, on the contrary, it may be presumed that Congress employed them having in mind the obligations contracted in the Treaty of Paris, and with the desire of giving to the persons included in its stipulations ready access to courts of justice, against any invasion of their rights by governmental action. And indeed, there should be no fear of entrusting to the courts the protection, not only of the persons mentioned in the treaty, but of any other persons, without excluding The People of Porto Rico. This has been demonstrated sufficiently by an experience of more than 10 years.

Although the only ground alleged for the appeal was the question of jurisdiction, which we have considered and decided, we have also carefully gone over the transcript of the record, and find that no material error has been committed.

Therefore, the appeal should be dismissed and the judgment appealed from, affirmed.

*Affirmed.*

Chief Justice Hernández and Justice Wolf concurred.

Mr. Justice MacLeary dissented.

Mr. Justice Figueras did not sit at the hearing of this case.

DISSENTING OPINION FILED BY MR. JUSTICE MACLEARY.

I cannot agree to affirm the judgment of the trial court rendered in this case. Differing as I do in all essential points from the other Justices in the consideration and decision of

this case, its importance demands that sufficient reasons should be given for my dissent. They will be set forth at some length.

This is an action of ejectment. The People of Porto Rico, as the defendant claiming to be the owner, and two citizens of Ponce, as the defendants claiming to be the tenant and subtenant in possession of a certain tract of land, were sued, in an action of ejectment, in the District Court of Ponce, by Manuel Rosaly, who also claims to be the owner, and entitled to the possession of the same tract of land, which is fully described in his complaint. The usual allegations of ownership, possession and ouster are made; and the two private persons, who were summoned as defendants, made default. The People of Porto Rico appeared, through the Attorney General and the district attorney, and, first having sought and taken a 20 days' extension of time to answer, demurred for a misjoinder of parties and also for an improper joinder of causes of action. These exceptions were overruled by the court and The People of Porto Rico, as the defendant, was required to answer the complaint, which was accordingly done.

The default of the two private persons was noted and, after a trial duly held and a full hearing therein, the court, on November 20, 1909, rendered judgment against all the defendants, including The People of Porto Rico, for the tract of land described in the complaint and the cancellation of the various writings by which the defendants claimed title thereto, for damages in the sum of one thousand two hundred dollars ($1,200), and all costs of suit.

From this judgment The People of Porto Rico, in due time, took an appeal to this court, and filed the record herein, including a statement of the case duly and properly made out and certified. Both parties filed briefs and the respondent made an oral argument. The two private persons who had been made defendants did not appeal. The case came on for hearing on the 4th of last month, and, after the trial, was

taken by the court under advisement, and finally decided, being affirmed on the 14th of the present month.

There was no plea to the jurisdiction interposed in the district court and no claim was there made by The People of Porto Rico that it could not be sued without its own consent. Nothing was said on this subject, as far as the record shows, by any of the parties until the case came before this court on appeal.

However, the appellant now claims that this being a jurisdictional question it can be raised at any time in any court taking cognizance of the case. This proposition does not appear to be directly or otherwise disputed by the respondent and it is sustained by ample authority. (*Carr* v. *United States,* 98 U. S., 433; *M. C. & L. M. Ry. Co.* v. *Swan,* 111 U. S. 379; *Great Southern Fire Proof Hotel Co.* v. *Jones,* 177 U. S., 499; *Reid* v. *United States,* 211 U. S., 529; *McLean* v. *Arkansas,* 211 U. S., 539.)

But as a preliminary matter, which should be first settled, the respondent claims that this action is not really brought against the Government but only against individuals claiming to be in possession of the land as agents of the Government. Then it may well be asked why was The People of Porto Rico made a defendant in this action; and why was this judgment rendered against the body politic and corporate representing the State or Territory or province, or legal entity of Porto Rico?

The respondent's counsel, in his brief, quotes a paragraph from the opinion of the Supreme Court of the United States in a case decided in the year 1897, viz:

"An action brought against individuals to recover the possession of land of which they have actual possession and control, is not an action against the State within the meaning of the Constitution, simply because those individuals claim to be in rightful possession as officers or agents of the State. Whether the one or the other party is entitled in law to possession is a judicial, not an executive or legislative question." (*Tindal* v. *Wesley* [1897], 167 U. S., 212.)

The quotation is not made by counsel literally from the volume of reports, but is substantially correct. Yet this decision has no bearing on the present litigation for two reasons. In the first place the two cases are entirely dissimilar. In the Tindal case the State of South Carolina was not a party to the suit; but Tindal, nevertheless, sought to maintain that the action brought against him was in effect a suit against the State, because he was an officer of the State and held possession of the land as such. The Supreme Court decided adversely to this position for the reasons given in the opinion. In the second place the eleventh amendment to the Constitution of the United States, forbidding suits against States, has reference alone to the courts of the United States and no others; and besides that amendment has never yet, so far as we are advised, been judicially held to be in force in Porto Rico. The exemption from suit, in its own courts, and without its own consent, by The People of Porto Rico does not rest on the eleventh amendment to the United States Constitution, but on the general and inherent rights of sovereigns, be they States or peoples, kingdoms or republics. So the preliminary objection made by the respondent falls to the ground worthless.

The respondent further asserts that The People of Porto Rico has surrendered whatever claim it may have had to exemption from unauthorized litigation and implicitly consented to the prosecution of the present suit. The immunity from suit existing in favor of the State, under the Constitution or otherwise, is a personal privilege which it may waive at pleasure and if The People of Porto Rico, as claimed by the respondent, have waived this privilege in a proper manner, it cannot refuse to submit to the jurisdiction of the court. (*Clark* v. *Barnard,* 108 U. S., 447.)

The power to authorize suits against the Government is one peculiar to the legislative department thereof, and has never been assumed or exercised by the executive or the judicial departments. Hence neither the Attorney General nor

any of his subordinates has or ever had any authority to waive this privilege or immunity from unbidden suits, even had they, or any of them desired to exercise such an enormous power. The power to entertain such suits is a jurisdictional one and this court will never hold that it can be conferred on the insular tribunals by the act or omission of any executive officer. We certainly have no wish to usurp jurisdiction over cases where the same is not conferred on us by the law of the land, nor will we suffer it to be imposed on us by any authorized officer of the Government.

The preliminary question presented to us here is: "Has The People of Porto Rico consented in any way to be sued, in an ejectment case brought by a private citizen against the Insular Government in its own courts?" The appellant answers this question in the negative. It further asserts that the only two exceptions to the general rule against the liability of the Government to unpermitted suits, are found in section 404 of the Political Code and section 1804 of the Civil Code. (Revised Statutes of Porto Rico, pp. 466 and 1164.) These two sections read as follows:

"Section 404.—*Civil responsibility.* That The People of Porto Rico shall be liable for injuries to persons or property occurring through a defect, or want of repair, or of sufficient protection, in or upon an insular highway in charge of the Bureau of Public Works, except where it shall be proved that such defects were caused by violence of the elements and that there had not been ample time in which to remedy them." (Political Code, sec. 404, p. 466 of Rev. Stats.)

"Section 1804.—* * *.

"The State is liable in this sense when it acts through a special agent, but not when the damage should have been caused by the official to whom properly it pertained to do the act performed, in which case the provisions of the preceding section shall be applicable." (Civil Code, sec. 1804, par. 5, p. 1164 of Rev. Stats.)

It clearly appears that neither of these sections is applicable to actions of ejectment nor to the trial of titles to land.

Then, if these are the only cases in which permission to bring suits against the Insular Government has been granted, the permission claimed by respondent's counsel has not been granted for the institution of an action of ejectment. We then arrive at the conclusion that no consent has been given expressly or by implication for bringing the present action, and that it stands alone on the same base as any other suit brought against the Insular Government. This disposes of the preliminary questions raised by the respondent and brings us to the consideration of the main proposition.

The principal question then is squarely presented, whether or not The People of Porto Rico, as a body corporate and politic, can be sued, in an action for the recovery of land and damages for its detention, in its own courts, without its consent. The Supreme Court of the United States has long ago recognized the immunity of sovereign Governments from uninvited suits. In an opinion, written by Mr. Chief Justice Taney, and delivered more than 50 years ago, the doctrine is expressed as follows:

"It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it." (*Beers* v. *Arkansas,* 61 U. S., 529.)

So to the same effect are numerous other cases, among them: *Cunningham* v. *M. & B. R. R. Co.,* 109 U. S., 451; *Hans* v. *Louisiana,* 134 U. S., 17; *Smith* v. *Reeves,* 178 U. S., 448; *Carr* v. *Indiana,* 11 L. R. A., 370.

The general principle of the immunity of sovereigns from hostile suits is well established, and a single authority on this point would be sufficient. The Arkansas case cited above.

It is generally admitted that a State cannot be sued in its own courts unless it has expressly consented to abrogate in this particular the prerogative of sovereignty, and allow such a suit to be brought. A statute permitting suits against the State would be in derogation of its sovereignty, and should be strictly construed. The rule on this subject has been very clearly stated in the following cases: *State* v. *Joiner,* 23 Miss., 500; *Purmilee* v. *McNutt,* 1 S. & M., 179; *Josselyn* v. *Stone,* 28 Miss., 753; *Raymond* v. *State,* 54 Miss., 562; 28 Am. Rep., 383, and many others.

But this may be considered as a well-established doctrine, in regard to the National Government and the States of the American Union, but not applicable to dependent organisms like Territories or mere possessions or provinces, in which class it may be contended that it is necessary to place The People of Porto Rico.

It is contended that The People of Porto Rico constituted a private corporation or legal entity similar to the District of Columbia, and that the words in the Organic Act, "with power to sue and be sued" subject the Insular Government, by the authority of the American Congress, to the suit of any private individual who chooses to call it before its own courts. In support of this proposition, we are referred to the cases of *Barnes* v. *District of Columbia,* to be found in 91 U. S., 547, and the *Metropolitan R. R. Co.* v. *District of Columbia,* to be found in 132 U. S., 1. The case of *Metropolitan R. R. Co.* v. *District of Columbia* originated in a suit brought by the District of Columbia itself, and not in one brought against it, and for that reason it cannot be cited to sustain the position of the respondent in this case.

But from the first of these cases, and the opinion therein rendered by Mr. Justice Hunt, it will be seen that the District of Columbia was, by act of Congress passed on February 21, 1871, constituted a municipal corporation with powers entirely similar to those conferred upon many cities in the United States, though slightly enlarged, making the governorship a

larger type of the usual mayoralty, and the legislative assembly an elaborate edition of an ordinary city council. It is easily seen that this corporation, thus constituted by the act of Congress for the District of Columbia, lacks that very important inherent power of sovereignty, which is the making of laws on which rights depend. This power is the one on which the decision of this case turns, because it is announced by the highest judicial authority that the exemption from suit which pertains to a sovereign is not conferred and does not spring from any antiquated conception or obsolete theory of the law, but is based on the logical and practical ground that there can be no legal right asserted in the courts against the authority which makes the law on which the right depends; and, moreover, that this doctrine is not confined to States having full sovereign powers, but it extends also to artificial persons of limited sovereignty, such as the Territories of the United States, like Hawaii, Arizona and New Mexico, which, in actual administration, have and exercise the power to originate and change the law governing contracts and property. (See *Kawananakoa* v. *Polyblank,* 205 U. S., 349.) The District of Columbia never had the power to make such statutes as are necessary to change the law governing contracts and property; such laws as this being made for it by the National Congress. The sovereign power of the District of Columbia being vested in the Government of the United States and not in the corporation of the District of Columbia, that municipal corporation has a right to sue and is subject to be sued under the ordinary rules that govern the Law of Procedure between private corporations and natural persons. The only possible similarity between the District of Columbia and The People of Porto Rico lies in the use made of the words "with power to sue and be sued," found in our Organic Act, which are not the key to the principle as is shown in the case cited from 205 U. S., 349, and other cases. On the fundamental question of legislative power to change the laws regulating contracts and

property rights, there is no similarity whatever between these two artificial persons.

It is well said by the highest judicial authority that there is an immense difference between the District of Columbia and the various Territories of the United States, consisting in the fact that the latter are themselves the fountains from which rights ordinarily flow, although Congress may intervene in their legis'ation, while in the former the body of private rights is created and controlled solely by Congress without the action of any district legislature. (*Kawananakoa* v. *Polyblank*, 205 U. S. 349.)

Another fault in the reasoning by which it is sought to put The People of Porto Rico on the same plane with the District of Columbia lies in the failure to distinguish between municipal corporations and political corporations. The District of Co'umbia was merely a municipal corporation; its "governor" was only an elaborated mayor and its so-called legislature a kind of city council. Congress always made its laws, just as it does now, and the essential element of sovereignty defined by Mr. Justice Holmes, in 205 U. S., 349, was totally lacking. The words "sue and be sued" do not furnish the key to the question, but "the authority to make the law on which rights depend," as announced by the Supreme Court of the United States in the case cited.

But the question is asked why did Congress make a difference between the Organic Act of Porto Rico and that of Hawaii, which were passed within a month of each other? Doubtless these bi'ls were evolved from distinct brains and were drawn by different scribes, and one followed one model and the other another. And the mere fact that the words "to sue and be sued" were inserted among the powers given to Porto Rico and omitted in those given to Hawaii was clearly due simply to an inadvertence or some such cause, and should be disregarded, as utterly unimportant, as was held in California in a similar case. It is our duty to construe the Organic Act, like every other statute, "so as to carry into effect the inten-

tion of the Legislature as it appears from the whole act and from contemporaneous legislation." (*Pond* v. *Maddox,* 38 Cal., 572 and 574.)

Mr. Justice Holmes, speaking for the Supreme Court of the United States, holds that Territories, like Hawaii, enjoy the same sovereign privilege of exemption from unpermitted suits which are conceded to the several States of the Union. He says in the course of an extensive and able opinion:

"A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends, and as this doctrine is not confined to full sovereign powers it extends to those, such as the Territories of the United States, which in actual administration originate and change the law of contract and property." (*Kawananakoa* v. *Polyblank,* 205 U. S., 349.)

A comparison of the respective Organic Acts of Hawaii and Porto Rico will show the entire similarity of those two Territories, in so far as each is "the fountain from which rights ordinarily flow" and that one is just as independent as the other.

(See Organic Act of Hawaii, 31 U. S. Stats. at Large, 141; and Organic Act of Porto Rico, 31 U. S. Stats. at Large, 77.)

The case of *Kawananakoa* v. *Polyblank,* 205 U. S., 349, is exactly parallel with the one at bar and should govern this court in the decision of this question. The very able opinion of Judge Rody, of the United States District Court for the District of Porto Rico, in the Elkins case, recently decided, discusses the question fully and is worthy to be followed.

In construing a statute like the Organic Act of Porto Rico, in order to arrive at the intention of Congress, which is the object of all statutory interpretation, it is necessary to consider the whole act together and not to limit our observation to a single phrase. It is only from the whole statute taken together that the purpose of Congress can be ascertained.

Thus we can determine whether the national legislature in the Organic Act intended to create of this newly acquired Island, having an area of 3,636 square miles inhabited by nearly a million people, a municipal corporation, such as is suitable for a small district or a city of restricted limits, or was it intended to provide a civil government for a people lately placed by the fortunes of war beneath the protecting folds of the American flag. The whole act, from the title to the enforcing clause, including the words "sue and be sued," indicates no other purpose than to create a civil government analogous in nearly every particular to those of the Territories previously acquired in various ways, and not an intention to class this Island with banks, railroad companies, insurance corporations and the like, or to place it on the same plane with the Federal district, which Congress, for obvious reasons, keeps continually under its immediate and, it may be said, personal supervision. (1 Kent's Com., 461 and 462; *Parkinson* v. *The State,* 14 Md., 184; 74 Am. Dec., 529.)

Notwithstanding these authorities it is further maintained that Congress itself has expressly given authority to whoever chooses so to do, to sue The People of Porto Rico, in its own courts; because in the Organic Act, section 7, it has declared that certain persons inhabiting this Island "shall constitute a body politic under the name of The People of Porto Rico, with governmental powers as hereinafter conferred, and with power to sue and be sued as such." (Rev. Stats. P. R., p. XVII, 31 Stats. at Large of the U. S., chap. 191, p. 79.) It will be observed that this section confers a "power" and does not impose an obligation, and that the power granted is conferred on The People of Porto Rico and not any other person. Then, as I think, this section should be construed as conferring on The People of Porto Rico the power to authorize suits to be brought against that legal entity in its own courts, whenever it may seem wise or just to elect that method of adjusting claims against the Insular Government. The local Legislature has the duty imposed upon it to

define the cases or classes of cases in which this may be done, and to designate the court having jurisdiction of the same and the methods of procedure which should be observed in all such cases. This the Legislature has done in two classes of cases in section 404 of the Political Code and in section 1804 of the Civil Code, which have been examined and are found not to include cases like the one now under consideration. The Legislature also has, on rare occasions, conferred on the insular courts jurisdiction to hear and determine special cases; as it did some years ago when it imposed on this Supreme Court original jurisdiction to try and to decide the claims of the Roman Catholic Church to certain lands and buildings in this city and other parts of the Island.

The fact that this right to bring suits against The People of Porto Rico, in certain cases and classes of cases, has been sometimes granted by the Insular Legis'ature, clearly shows that in other cases and classes of cases such a right has been withheld. This attribute of sovereignty would naturally, after having been conferred or left intact by the Congress of the United States, be jealously guarded by our Insular Government, and preserved inviolate by the Legislature of the Island.

The words "power to sue and be sued" mean nothing more than capacity to litigate, or conduct business in the courts of the country. They do not confer jurisdiction of the person on any court, nor do they restrict such jurisdiction. An instructive case, in this connection, is that decided by Justice McCrary, in the year 1881, styled *St. Louis Nat. Bank* v. *Allen*, 5 Fed Rep., 551. He says that the words "to sue and be sued" give to a corporation "only the general capacity to sue and not a particular privilege to sue in the courts of the United States." To the same effect is the opinion of the Supreme Court of the United States, rendered by Mr. Chief Justice Marshall, in the year 1809, in the case of *U. S. Bank* v. *Deveaux* (5 Cranch), 9 U. S., 85. In this opinion Chief Justice Marshall says:

"The plaintiffs contend, that the incorporating act confers this jurisdiction. That act creates the corporation, gives it a capacity to make contracts and to acquire property, and enables it "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in courts of record, or any other place whatsoever." This power, if not incident to a corporation, is conferred by every incorporating act, and is not understood to enlarge the jurisdiction of any particular court, but to give a capacity to the corporation to appear, as a corporation, in any court which would by law, have cognizance of the cause, if brought by individuals. If jurisdiction is given by this clause to the federal courts, it is equally given to all courts having original jurisdiction, and for all sums however small they may be."

So it is clear that these words, "to sue and be sued," do not subject the corporation to which they are applied to the jurisdiction of any court whatever, nor authorize any person to invoke such jurisdiction not otherwise conferred.

We are certainly not justified in giving to the words "sue and be sued" such a narrow construction as to totally defeat the purpose of the Organic Act, which is declared in its title to be "to provide civil government for Porto Rico" among other objects had in view by the law-making power. Taking the whole act together, it clearly appears to have been the object of the National Congress to erect in this Island a government very similar to the usual territorial governments created for newly acquired possessions on the continent, some of which have been in existence for more than half a century.

It is said, on behalf of the respondent herein, that to exempt Porto Rico from unpermitted suits would be a dangerous proceeding, in view of the fact that the Insular Government has issued bonds which are held by many persons in the United States and elsewhere, and that they, in case of default, should have the right to go into the courts to collect them. Without discussing the ultimate question of the execution of the judgment in case one should be rendered, it is sufficient to allay all fears to remind investing capitalists that, should

the Insular Government attempt to repudiate its obligations, Congress at any time, by virtue of the reserved power remaining in its hands, can compel a compliance with all such obligations; and there is no danger whatever of any refusal to pay all just debts on the part of The People of Porto Rico.

It does not matter in the least what may have been the law or the practice in regard to bringing suits against the Province of Porto Rico in such cases during the Spanish domination. Nor is any question involved in this case which requires the interpretation of the Treaty of Paris by which the Island of Porto Rico was transferred to the United States. We are administering the laws of Porto Rico under the American Government and must follow the principles of public law, especially as regards questions of sovereignty, laid down by the Congress of the United States and interpreted by the American courts.

This organic law of our Island has, in everything except the name, granted to our people a complete system of territorial government. It establishes the three coordinate branches of administration, now almost universal among free peoples, the legislative, the executive and the judicial, though in some particulars, like in the Government of Great Britain, they overlap each other. We have a Governor, who is the head of the executive department, consisting of numerous branches, aiding him in the discharge of his high functions, a bicameral legislature which makes our laws, subject only to revocation, amendment or alteration by the American Congress, a power very rarely exercised; a complete judicial system, consisting of one Supreme Court, several district courts, many municipal courts, and various courts of justices of the peace. Besides, we have within our territorial limits a Federal court with more ample jurisdiction than many of the district courts of the United States existing on the continent.

Our Legislature, exercising to that extent its sovereign powers, has adopted several complete American codes of laws,

consisting of a Political Code, a Civil Code, based largely on the old Spanish Civil Code, a Penal Code and a Code of Criminal Procedure, a Code of Civil Procedure, an elaborate Law of Evidence, and has to some extent modified the Spanish Mortgage Law and the preexisting Code of Commerce; and at its annual sessions is continually making changes and improvements in the existing body of statutes. Thus we find our Insular Government exercising all the essential attributes of sovereignty fully to as great an extent as any organized Territory of the United States. Free government exists in Porto Rico not restrained by the superior Government at Washington, but sustained, guided, and protected thereby in all its functions, operated for the benefit of our people in their enjoyment of life, liberty and property, and in the pursuit of enlightened prosperity and happiness.

Beside the authorities already cited, the Supreme Court of the United States, in a case decided in 1908, held that Porto Rico is a completely organized Territory of the United States, though it had not yet been incorporated into the body thereof, and that at least Porto Rico was a territory such as is contemplated in the National statutes in regard to extradition and interstate rendition. (U. S. Stats, sec. 5278; *People of New York ex rel. Kopel* v. *Bingham,* 211 U. S., 476.)

And that this is so because Porto Rico has in force a complete system of local self-government, and our Legislature, of itself makes, modifies, changes and repeals its laws at its own pleasure, subject, of course, as is the case in Arizona and other Territories on the continent, to the supervisory powers of Congress. Then it clearly follows that Porto Rico has the sovereign powers, in its ordinary functions, to enact and modify the laws of property and proprietary rights, the regulation of contracts and obligations, and other laws from which its citizens derive their civil rights, and is just as much a sovereign and exercises as many sovereign powers as any of

the continental Territories, which have long since been incorporated into the United States as a part of the body politic. (*Elkins* v. *People of Porto Rico*, decided by the U. S. Dist. Ct. for P. R. in 1909.)

Then, taking the view expressed in the foregoing pages, we should hold that the District Court of Ponce had not jurisdiction to hear and determine such a case as this against The People of Porto Rico, and that in so far as it relates to the Insular Government, the judgment rendered by the said trial court in this case, on the 20th day of November last, should be reversed, and a judgment here rendered dismissing the complaint made against The People of Porto Rico.